# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| COGNIZANT TECHNOLOGY SOLUTIONS and COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION<br><br>*Plaintiffs*,<br><br>v.<br><br>JEAN-CLAUDE FRANCHITTI and VARTAN PIROUMIAM,<br><br>*Defendants*. | Civil Action No.<br>3:21-cv-16937 (PGS)(RLS)<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on two motions: (1) Defendant Vartan Piroumiam's ("Piroumiam") Motion to Dismiss under the "first filed" rule and under Rule 12(b)(6), (ECF No. 3); and (2) Defendant Jean-Claude Franchitti's ("Franchitti") Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction, (ECF No. 4). The Court heard oral argument on May 23, 2022. Both motions are denied.[1]

---

[1] Plaintiffs Cognizant Technology Solutions and Cognizant Technology Solutions U.S. Corporation filed a Motion to Substitute Party (Defendant Edward Cox) and a Motion to Remand. (ECF No. 12). However, these motions were withdrawn and Plaintiffs stipulated to Cox's dismissal from the case. (ECF No. 31).

1

# I.

Plaintiffs Cognizant Technology Solutions and Cognizant Technology Solutions U.S. Corporation (together Plaintiff or "Cognizant") are together a business which "provides technology services to its corporate clients on an individual project basis, as many of its clients do not have in-house IT departments." *Franchitti v. Cognizant Tech. Sols.*, No. 17-6317, 2021 WL 3634161, at *1 (D.N.J. Aug. 17, 2021) (Sheridan, J.). Franchitti and Piroumiam are former employees of Cognizant. (Complaint ¶15, ECF No. 2). The relationship between Cognizant and the two defendants is highly acrimonious, and at present, the parties are involved in at least two other lawsuits. The two defendants in this case are plaintiffs in a putative class action discrimination case against Cognizant in the Central District of California, *Palmer v. Cognizant Tech. Sols. Corp.*, No. 17-6848 (C.D. Cal. filed Sept. 18, 2017). Additionally, Franchitti is the relator in a qui tam action against Cognizant before this Court, *Franchitti v. Cognizant Tech. Sols. Corp.*, No. 17-6317 (D.N.J. filed Aug. 22, 2017).

Relevant to this litigation, Franchitti joined Cognizant in 2007 and Piroumiam joined Cognizant in 2012. (Complaint at ¶¶16, 18). Franchitti and Piroumiam both left Cognizant between July 2016 and August 2017. (*Id.*). Piroumiam signed a non-disclosure agreement (NDA), (*id.* at ¶25), while Franchitti signed an NDA which is "not identical" but has "substantially similar" terms, (*id.*

2

at ¶19).  Both NDA's prohibit the use or disclosure of "Confidential Information," which has a similar definition under both NDA's, broadly applying to documents and information related to Cognizant's finances, business strategy, personnel, and customers.  (*Id.* at ¶¶20-28).  Both require that Confidential Information be returned to Cognizant at the end of employment.  (ECF No. 2 at 19-56).  Both are governed by the laws of the State of New Jersey.  (*Id.*); (Complaint at ¶¶22, 29).  The agreement signed by Piroumiam included a forum selection clause designating a New Jersey state or federal court as forum for any litigation arising out of the NDA's. (ECF No. 2 at 32, 47).  The clause reads:

> All suits, proceedings and other actions relating to, arising out of or in connection with this Agreement will be submitted solely to the in person am jurisdiction of the United States District Court for the District of New Jersey ("Federal Court") or to any court of general jurisdiction in the state of New Jersey if the Federal Court lacks jurisdiction to hear the matter.  Employee hereby waives any claims against or objections to such in personam jurisdiction.

(*Id.*).  Franchitti's agreement did not include a forum selection clause.  (*Id.* at 52-56).[2]

In addition, while employed by Cognizant, Franchitti and Piroumiam both received a "Handbook," which provided they, "should not disclose any information

---

[2]  On a motion to dismiss, the Court may consider a document that is integral to the complaint.  *See Bridges v. Torres*, 809 Fed. App'x 69, 71 (3d Cir. 2020); *Conceicao v. Nat'l Water Main Cleaning Co*, 650 F. App'x 134, 135 (3d Cir. 2016).

that affects the business interests of Cognizant, including but not limited to information concerning the company or any client's businesses, discoveries, inventions, assets, financial data, nonpublic information, proprietary information, know-how, technology, the identity or activities of clients and vendors, internal procedures or other business information." (Complaint at ¶33); (ECF No. 2 at 89). The Handbook also declared that "protecting" such information was the "responsibility" of Cognizant employees, (Complaint at ¶34); (ECF No. 2 at 89), and it required employees to return all company property at the end of employment, (Complaint at ¶35); (ECF No. 2 at 92). Likewise, Franchitti and Piroumiam both received a written "Code" of "Core Values and Standards of Business Conduct," which required them to protect "Cognizant's proprietary, competitively sensitive, and confidential information . . . ." (Complaint at ¶39, Ex. 5).

Prior to leaving Cognizant between July 2016 and August 2017, both allegedly downloaded confidential documents and information. (*Id.* at ¶¶40-43). Franchitti allegedly is in possession of the entirety of his email history from his time at Cognizant, comprising hundreds of thousands of emails and documents. (*Id.* at ¶42). Piroumiam allegedly possesses 6,000 "Cognizant documents." (*Id.* at ¶43).

4

In August 2017, Franchitti commenced his qui tam action before this Court. *Franchitti*, No. 17-6317.  In September 2017, the Central District of California litigation commenced.  *Palmer*, No. 17-6848.  Both cases are ongoing.

Cognizant commenced this action against Franchitti and Piroumiam in July 2021 in the Superior Court of New Jersey, Bergen County Vicinage.  (ECF No. 1 ¶1).  It was removed to this Court on September 14, 2021, on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a).  (ECF No. 1-1).  Cognizant brings claims for breach of contract and breach of fiduciary duty.  (Complaint at ¶¶44-54).  As relief, Cognizant seeks injunctions barring the Defendants from "taking any further action as it relates to the misappropriated information, documents, and assets owned by Cognizant and its clients" and "requiring Defendants to return any information, documents, and assets in their possession and that they retrieve any documents in the possession of others . . . ."  (Complaint).  Cognizant also seeks to disgorge the salaries it paid to Defendants.  (*Id.*).  And in addition, Cognizant seeks punitive damages.  (*Id.*).

Defendants want the case dismissed; Piroumiam submits that the case should be dismissed under the first filed rule and for failure to state a claim, (ECF No. 6), while Franchitti challenges the Court's personal jurisdiction over him, (ECF No. 5).

5

## II.

Franchitti challenges the personal jurisdiction of the Court, arguing that he is a citizen of New York and does not have the requisite minimal contacts with New Jersey. Whether a court has jurisdiction to hear a case is a threshold question. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (internal citations omitted).

A defendant may move to dismiss a complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). "The burden of demonstrating facts that establish personal jurisdiction falls on the plaintiff[]." *Colvin v. Van Wormer Resorts, Inc.*, 417 Fed. App'x 183, 185-86 (3d Cir. 2011). "A determination of minimum contacts is based upon findings of fact." *N. Penn Gas v. Corning Natural Gas*, 897 F.2d 687, 688 (3d Cir. 1990). Therefore:

> A Rule 12(b)(2) motion, such as the motion made by the defendant[] here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. [T]herefore, at no point may a plaintiff rely on the bare

6

> pleadings alone in order to withstand a defendant's Rule
> 12(b)(2) motion to dismiss for lack of in personam
> jurisdiction.  Once the motion is made, plaintiff must
> respond with actual proofs, not mere allegations.

*Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) (internal citations omitted).

There are two forms of personal jurisdiction:  general and specific.  *Kyko Global, Inc. v. Bhongir*, 807 Fed. App'x 148, 151 (3d Cir. 2020).  A court has general personal jurisdiction over a defendant where the defendant's contacts with the forum state are so "continuous and systematic" that the defendant is "essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ."  *Id.* at 137 (internal quotation marks omitted).  Here, the Court does not have general personal jurisdiction over Franchitti because he is a citizen of New York.  (Complaint at ¶6).

Specific personal jurisdiction over a defendant "arises out of or relates to the defendant's contacts with the forum," *id.* at 127, and a court is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).  The Third Circuit has a three-step inquiry for determining whether a court has specific personal jurisdiction over a defendant:

> First, the defendant must have purposefully directed [his]
> activities at the forum state.  Second, the litigation must
> arise out of or relate to at least one of those activities.
> Third and last, if the first two steps of the inquiry have
> been met, the court must consider whether the exercise of
> personal jurisdiction comports with fair play and
> substantial justice.

*Kyko Global*, 807 Fed. App'x at 151 (internal quotation marks and citations omitted).  "Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities." *Vetrotex Certainteed Corp. v. Cosol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (internal quotation marks omitted).  "In contract cases," such as this case, "courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Telcordia Tech., Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (internal quotation marks omitted).

With respect to specific personal jurisdiction, Franchitti submits that he worked remotely, only traveled to New Jersey for work, and cannot be subject to jurisdiction based on his "corporate capacity."  (ECF No. 5 at 6-8).  Cognizant counters that Franchitti reported to Cognizant's New Jersey office and even when he began working remotely, made regular visits to the New Jersey office.  (ECF No. 13 at 7-9).  Cognizant adds that Franchitti alleged in his qui tam complaint that "[h]e worked out of Cognizant's global headquarters located at 500 Frank W. Burr Boulevard in Teaneck, New Jersey and also worked remotely from his home office

in New York," (ECF No. 13 at 8), which is reflected in Paragraph 32 of Franchitti's Amended Complaint, (ECF No. 30-1 ¶32, *Franchitti v. Cognizant*, No. 17-6317 (filed Aug. 22, 2017)).[3]   And in a footnote, Cognizant submits that because Franchitti is a relator in the qui tam action against Cognizant in this district, he would not be prejudiced by having to defend himself against Cognizant's lawsuit in this district.  (ECF No. 6 at 6 n.2).  Franchitti replies that his tortious conduct took place after his employment with Cognizant, so he has not availed himself of the laws of New Jersey, and further, he has not consented to New Jersey's jurisdiction by virtue of being a relator in the qui tam action.  (ECF No. 17 at 4-7).

This case bears similarity to a recent case in the Eastern District of Pennsylvania, *M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 492 (E.D. Pa. 2021). In *Hart*, an employer brought a breach of contract claim and tort claims against a former employee who allegedly breached confidentiality agreements by retaining the employer's "confidential information and secrets." *Id.* at 488.  The employer was a citizen of Pennsylvania, while the employee was a citizen of New Jersey who "worked from her New Jersey home which is about fifty miles from [the employer]'s [Pennsylvania] headquarters," and only visited the office "three to

---

[3] The Court considers this more than a "mere allegation[]" for the purpose of this 12(b)(2) motion. *Patterson*, 893 F.2d at 604.

9

four times a year." *Id.* at 486.  The district court determined that it had personal jurisdiction over the employee, reasoning the employee "knew she worked for a Pennsylvania company," lived a relatively short distance away from the company's office and made "quarterly" trips there, and would not be "burdened" by having to defend herself in Pennsylvania.  *Id.* at 496.

The Court has specific personal jurisdiction over Franchitti.  According to Franchitti's own allegations in the qui tam action, he worked out of Cognizant's office in Teaneck, New Jersey for a time.  (ECF No. 30-1 ¶32, *Franchitti*, No. 17-6317 (D.N.J. filed Aug. 22, 2017)).  As such, Franchitti knew he worked for a New Jersey company.  Further, Franchitti does not dispute that the NDA between Cognizant and Franchitti arose out of his employment based in New Jersey; therefore, Franchitti's contacts with New Jersey were "instrumental in the . . . formation of the contract," *Telcordia Tech.*, 458 F.3d at 177, and Franchitti "purposefully directed his activities at" this forum, *Kyko Global*, 807 Fed. App'x at 151.  And although Franchitti may have breached his NDA only after his employment with Cognizant ended, the fact that the NDA related to his New Jersey-based employment means he nevertheless had sufficient minimal contacts with this forum, *Hart*, 516 F. Supp. 3d at 494-95, and the litigation "arises out of" activities Franchitti directed at this forum, *Kyko Global*, 807 Fed. App'x at 151.  Furthermore, given that Franchitti is already litigating against Cognizant as the

10

relator in a qui tam action in this forum, he would not be burdened by being forced to defend himself in this forum. And lastly, this forum has an interest in resolving questions of New Jersey law, which governs the contract, so "the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 482-83 (1985); *see also Kyko Global*, 807 Fed. App'x at 151.[4] As such, Franchitti's motion to dismiss for lack of personal jurisdiction is denied.

### III.

Piroumiam argues this case should be dismissed under the first filed rule, "because the Central District of California has already assumed jurisdiction over the same subject matter. Specifically, Judge Gee has already required the Parties to confer and to preserve documents in connection with the claims at issue in that case, . . . and – at the Parties' request, has entered a stipulated protective order the Parties designed to balance their need for discovery in that case with the need to protect confidential information from unnecessary disclosure." (ECF No. 6 at 14). Cognizant counters that this action is not truly duplicative of the Central District of California action, so the first filed rule does not apply. (ECF No. 14 at 12-17).

---

[4] In determining whether the assertion of personal jurisdiction comports with "fair play and substantial justice," a court considers: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Rudzewicz*, 471 U.S. at 477 (internal quotation marks omitted).

The first filed rule is "the general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982); *see also E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) *aff'd*, 493 U.S. 182 (1990).  A court may "exercise [its] discretion by enjoining the subsequent prosecution of similar cases . . . in different federal district courts." *Univ. of Pennsylvania*, 850 F.2d at 971.  "The letter and the spirit of the first-filed rule . . . are grounded on equitable principles" and "the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Id.* at 977 (citations omitted).

Historically, there has been some disagreement within the Third Circuit, and even within the District of New Jersey, as to how the first filed rule should be applied.  Some courts have held that the first filed and second filed matters only need to have "substantial overlap," while others require both matters to have the "same issues" and "same parties." *See Coyoy v. United States*, 526 F .Supp. 3d 30, 43 (D.N.J. 2021).  The latter test is quite strict; "issues between the actions must be so similar that a decision in one case would leave little or nothing to be determined in the other." *Id.* (internal quotation marks omitted).  The "same issues" and "same parties" test seems to be the preferred test by recent decisions from this district and the Third Circuit. *Id.* at 43-44; *see also Chavez v. Dole Food Co.*, 836 F.3d 205,

210 (3d Cir. 2016); *Honeywell Int'l, Inc. v. Int'l Union*, 502 Fed. App'x 201, 205-06 (3d Cir. 2012); *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007); *RB Restoration, Inc. v. Mosaic, Terrazzo and Chem. Prod. Decorative Finisher Masons Worker Assoc. Local No. 7*, No. 21-19770, 2022 WL 557852, at *5 (D.N.J. Feb. 24, 2022); *Atanassov v. Amspec Servs., LLC*, No. 15-3628, 2016 WL 740269, at *2-3 (D.N.J. Feb. 24, 2016). Under the "same issues" and "same parties" test, the first filed rule does not apply in this instance, because the first filed action in in Central District of California is a putative class action employment discrimination suit, while the second filed action in this district is a breach of contract suit; the issues are different.

Even if the Court were to apply the first filed rule in this instance, the Third Circuit strongly disfavors dismissal under the rule. *Chavez*, 836 F.3d at 217. Dismissal "create[s] an unwarranted risk of legal prejudice," *id.* at 218 (quoting *Cent. States, Southeast & Southwest Areas Pens. Fund v. Paramount Liquor Co.*, 203 F.3d 442, 445 (7th Cir. 2000)), and "creates the risk that the merits of the claims could never be addressed," *id.* at 219 (internal quotation marks omitted). As such, the motion to dismiss under the first filed rule is denied.

## IV.

Piroumiam also moves to dismiss Cognizant's complaint for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6). (ECF No. 6 at

13

16-19).  Under Fed. R. Civ. P. 8(a)(2), a complaint "requires only a short and plain statement of the claim showing that the pleader is entitled to relief."  "In deciding a Rule 12(b)(6) motion, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff."  *United States v. Loving Care Agency, Inc.*, 226 F. Supp. 3d 357, 362-63 (D.N.J. 2016).  The plaintiff's factual allegations must give rise to a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court should disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements."  *Santiago v. Warminster Township*, 629 F.3d 121, 128 (3d. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

The Third Circuit set forth a three-part test for determining whether or not a complaint may survive a motion to dismiss for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (alteration in original) (quoting *Iqbal*, 556 U.S. at 675, 679).

14

Piroumiam contends that Cognizant has failed to plead the element of damages for both of its claims because its only allegation with respect to damages is conclusory. (ECF No. 6 at 17-18). Piroumiam also contends that Cognizant's demand for punitive damages should be dismissed because Cognizant cannot collect punitive damages on a breach of contract claim and has not alleged facts which could justify an award of punitive damages if proven true. (*Id.* at 18-19). And Piroumiam asserts that Cognizant's complaint should be dismissed because he had an "obligation and a right to preserve documents in his possession" in anticipation of his litigation against Cognizant in the Central District of California. (ECF No. 6 at 19-22).

Count I is a claim for breach of contract. (Complaint at ¶¶44-48). In New Jersey, there are four elements to a breach of contract claim:

> first, that the parties entered into a contract containing certain terms; second, that [the] plaintiff did what the contract required [the plaintiff] to do; third, that [the] defendant did not do what the contract required [the defendant] to do, defined as a breach of the contract; and fourth, that [the] defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff.

*Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)); *see also Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 342 (D.N.J. 2020). While "the damages 'must be a reasonably certain consequence of the breach although the

exact amount of the loss need not be certain,'" *Nelson v. Elizabeth Bd. of Educ.*, 246 A.3d 802, 812 (N.J. Super. Ct. App. Div. 2021) (quoting *Donovan v. Bachstadt*, 453 A.2d 160, 166 (N.J. 1982)), the exact amount of Cognizant's loss for Defendants' alleged breach of their NDA's is a question of fact which may be determined at a later date. As such, Piroumiam's motion to dismiss Count I is denied.

Count II is a claim for common law breach of fiduciary duty. (Complaint at ¶¶49-55). "An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship." *Kaye v. Rosefielde*, 121 A.3d 862, 869 (N.J. 2015) (quoting *Restatement (Third) of Agency* § 8.01 (2005)). "Loyalty from an employee to an employer consists of certain very basic and common sense obligations." *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1168 (N.J. 2001). "[E]mployees have a common law duty to safeguard confidential information they have learned through their employment relationship and that they are generally precluded from sharing that information with unauthorized third parties." *Quinlan v. Curtiss-Wright Corp.*, 8 A.3d 209, 221-22 (N.J. 2010). Notably, relief available to an employer is a "fact-sensitive" question. *Kaye*, 121 A.3d at 869-70. And an employer bringing a claim for a breach of the duty of loyalty does not need to prove a loss, because "a disloyal agent is not entitled to compensation, even though the conduct of the agent does not harm the

principal." *Id.* at 872-73.  This rule is meant "to secure the loyalty that the employer is entitled to expect when he or she hires and compensates an employee." *Id.* at 873.  As such, Piroumiam's motion to dismiss Count II is denied.

With respect to Cognizant's demand for punitive damages, Piroumiam is correct that punitive damages are not available for breach of contract claims, but this is only if "the breach of contract does not also constitute a tort for which punitive damages are recoverable." *Buckley v. Trenton Sav. Fund Soc'y*, 524 A.2d 886, 892 (N.J. Super. Ct. App. Div. 1987).  Here, Cognizant has also pled a count for Defendants' alleged breach of the duty of loyalty, a count for which punitive damages may be awarded.  *See Pfeifer v. Langone*, Nos. A-3168-10, A-4095-10, 2012 WL 634751, at *1 (N.J. Super. Ct. App. Div. Feb. 29, 2012).  Additionally, while the Court agrees that punitive damages are only available if conduct is "egregious," *id.*, whether conduct is egregious is a question of fact and discovery may fill the gaps.  As such, Piroumiam's motion to dismiss the demand for punitive damages is denied.

Finally, Piroumiam's argument that he engaged in "protected activity" in retaining documents subject to his NDA is inappropriate to consider at this early stage of the litigation.  Piroumiam's argument rings like an affirmative defense, as he essentially contends that even if Cognizant's allegations are true, he cannot be held liable for his conduct.  *See Sterten v. Option One Mortg. Corp.*, 546 F.3d 278,

284 n.9 (3d Cir. 2008).[5]  Courts rarely consider affirmative defenses on motions to dismiss, and when courts do, it is when a plaintiff has failed to answer a defendant's affirmative defense.  *Clean Air Council v. United States Steel Corp.*, 4 F.4th 204, 211 (3d Cir. 2021).  It remains a question of fact whether Piroumiam merely engaged in protected activity by retaining the documents or retained sensitive information irrelevant to the Central District of California putative class action.[6]

## ORDER

**THIS MATTER** having come before the Court on (1) Defendant Vartan Piroumiam's Motion to Dismiss under the "first filed" rule and under Rule 12(b)(6) (ECF No. 3), and (2) Defendant Jean-Claude Franchitti's Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction (ECF No. 4); and the Court having carefully reviewed and taken into consideration the submissions of

---

[5]  The Third Circuit has defined an "affirmative defense" as "a matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it.  A response to a plaintiff's claim which attacks the plaintiff's legal right to bring an action, as opposed to attacking the truth of the claim."  *Sterten*, 546 F.3d at 284 n.9 (internal quotation marks omitted).

[6]  Additionally, even if the Court were to consider Piroumiam's defense at this early stage of the litigation, his reliance on *Quinlan*, 8 A.3d 209, is misplaced, as that case concerned the retention of documents as protected activity under the New Jersey Law Against Discrimination, *id.* at 221, and not under the federal laws underlying his claims as a plaintiff in the Central District of California putative class action, (*See* ECF No. 145, *Palmer*, No. 17-6848 (C.D. Cal. filed Sept. 18, 2017)).

the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this ___19___ day of _July_ 2022,

**ORDERED** that Defendant Vartan Piroumiam's Motion to Dismiss (ECF No. 3) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Jean-Claude Franchitti's Motion to Dismiss (ECF No. 4) is **DENIED.**

_____
PETER G. SHERIDAN, U.S.D.J.