**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION<br><br>*Plaintiffs*,<br><br>v.<br><br>JEAN-CLAUDE FRANCHITTI, and VARTAN PIROUMIAN<br><br>*Defendants*. | Civil Action No. 21-cv-16937<br><br>**MEMORANDUM AND ORDER** |

This case is before the Court on Plaintiffs Cognizant Technology Solutions Corporation's and Cognizant Technology Solutions U.S. Corporation's (collectively "Plaintiffs" or the "Company") motion to dismiss Defendants Jean-Claude Franchitti's ("Franchitti") and Vartan Piroumian's ("Piroumian" and collectively, "Defendants" or "Employees") counterclaims to the Complaint under Title VII of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination ("NJLAD"). (ECF No. 61). Oral argument was heard on October 5, 2023.

For the reasons stated below, this motion is **DENIED**.

**I.**

The Court has jurisdiction under 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000. Venue is proper as the matter was previously removed from New Jersey State Court. 28 U.S.C. § 1441(b).

**II.**

a. <u>Background</u>

Defendant Jean-Claude Franchitti was employed by the Company from April 16, 2007 until July 20, 2016. (ECF No. 1 at 16). Defendant Vartan Piroumian was employed by the Company from April 2, 2012 until August 2, 2017. (*Id.* at ¶ 16). Franchitti was employed first as Chief Architect and then later as Assistant Vice President. (ECF No 1-2 ¶ 16). Piroumian was employed in several Associate Director level roles such as a Principal Architect and an Enterprise Architect. (*Id.* at ¶ 18).

Due to the nature of their positions, Defendants were privy to "proprietary and competitively sensitive information, including, but not limited to, employee information, pricing discussions and negotiations, client negotiations and sales processes." (*Id.* at ¶¶ 16, 18). Additionally, each of the Defendants signed non-disclosure agreements (the "NDAs") and agreed to maintain the confidentiality of the Company's business information pursuant to the Company's Employee

Handbook and Code of Conduct. (*Id.* at ¶¶ 33-38).

Defendants in this matter have filed numerous lawsuits and Equal Employment Opportunity Commission ("EEOC") complaints against the Company. The Court summarizes them chronologically below:

- On **October 7, 2016**, Franchitti filed a charge of discrimination against the Company with the EEOC; this complaint was filed after Franchitti had ceased working with the Company. (*Id.* at ¶ 35). There, Franchitti alleged retaliation and age and national origin discrimination in that he was "discharged due to age, national origin and in retaliation" and that "[d]uring the last several years of [his] employment, hundreds of employees at Cognizant have been fired due to their age and/or non-Indian born national origin." (ECF No. 55 at ¶ 30). His claim before the EEOC similarly alleges his claim of Cognizant's commission of visa fraud. (*Id.*). The EEOC ultimately issued a Letter of Determination finding Cognizant had violated Title VII and sought to resolve the claims. (ECF No. 55 at 31). A settlement between Franchitti and the Company as to the Title VII claim was discussed in 2020, but it was not finalized because Franchitti refused to waive his right to other pending complaints or charges because Franchitti had already filed suit in 2017 against the Company under the FCA. (ECF No. 55 at ¶ 32).

- On **October 14, 2016,** Piroumian—before his employment with the Company had ended—filed a charge of discrimination against the Company with the EEOC at which time he was issued a preservation notice. (ECF No. 55 at ¶ 16).

- On **August 22, 2017,** Franchitti filed a *qui tam* lawsuit asserting False Claims Act ("FCA") claims against the Company in the District of New Jersey captioned *Franchitti v. Cognizant Tech. Sols. Corp., et al.*, No. 17-06317 (hereinafter the "*Qui Tam* Action"). (*Id.* at ¶ 36).

- On **September 18, 2017**—following his separation from the Company—Piroumian and two other named plaintiffs filed an action in the United States District Court for the Central District of California, captioned *Palmer, et al. v. Cognizant Technology Solutions Corporation and Cognizant Technology Solutions U.S. Corporation*, No. 17-06848 (C.D. Cal.) (hereinafter "the California Action"). (ECF No. 55 at ¶ 21).

- On **February 16, 2021,** Franchitti filed an individual action against the Company in the United States District Court for the Southern District of New York (hereinafter the "New York Action"). (*Id.* at ¶ 39).

- On **February 20, 2021,** Franchitti filed a second charge of discrimination against the Company on the basis that the proposed Settlement Agreement was in furtherance of the Company's

discriminatory scheme and retaliation for Franchitti's speaking out. (ECF No. 55 at 35). In support of this theory, he pled that former employees Mohan Ramachandran, Vipul Khanna, Nandagiri Narasimha Srinivas, and Venugopal Lambu failed to return their Cognizant laptop(s) upon their departure from the company, but the Company had not sued these individuals. (ECF No. 55 at ¶ 44).

According to Plaintiffs, the claims at the heart of this lawsuit arose when sometime in 2020, Plaintiffs claim they learned that Defendants had breached their NDAs when Defendants each produced a .pst file containing thousands of Plaintiff's documents during discovery in the California Action. (ECF No. 55 at ¶ 40). This .pst file allegedly contained "every email [Plaintiffs] ever sent or received while they were employed by the Company" after they no longer worked for the Company. (T5:6-9). Plaintiffs claim that such retention is in breach of (1) the NDAs; (2) the requirements set forth in the Company's Employee Handbook and Code of Ethics; and (3) the duty of loyalty the Employees owed to the Company. (ECF No. 61-1 at 5).

b. <u>Procedural History</u>

On July 23, 2021, Plaintiffs filed their initial Complaint alleging breach of contract and breach of fiduciary duty. (ECF Nos. 1-2). On September 14, 2021, Defendants moved to remove the matter from New Jersey State Court to the District

Court of New Jersey. (ECF No. 1). On March 1, 2023, Defendants filed their Amended Answer to the Complaint containing the Counterclaims presently before the Court. (ECF No. 55).

Defendants plead two counts in their Counterclaim against the Company. First, Defendants allege retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3 ("Title VII"). (ECF No. 55 at 19). Second, Defendants allege retaliation in violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(d) ("NJLAD"). (*Id.*).

The Counterclaims contend the Company retaliated against Defendants for engaging in protected activities. (ECF No. 55 at 19). Specifically, Defendants allege that they engaged in the following protected activities: (*1*) they filed charges of discrimination against the Company with the EEOC; (*2*) they commenced the California Action alleging claims of race and national origin discrimination; and (*3*) Franchitti filed (a) the *Qui Tam* Action against the Company under the FCA alleging the Company participated in pervasive and ongoing visa fraud and (b) the New York Action for claims of retaliation based termination. (ECF No. 55 at 19).

As a consequence of these activities, Defendants allege that the Company filed this lawsuit to (1) divest Defendants of "all financial compensation paid to [them] during their employment with Cognizant" (this compensation totals "in

the millions of dollars for Counterclaim Plaintiffs' collective fourteen years of employment with [the Company]") and (2) to "intimidate and coerce [the Defendants] to settle or withdraw from participation in the aforementioned lawsuits and charges." (ECF No. 55 at 19-20). Defendants further allege that the Company "has not taken similar action against other former employees who retained their [Company] assets and/or confidential [Company] documents following their departure . . . ." (*Id.*).

Plaintiffs present two arguments on which they argue that Defendants' Counterclaims should be dismissed for failure to state a claim for retaliation under Title VII and NJLAD: (1) Defendants failed to sufficiently plead they suffered an adverse employment action and (2) the Complaint is protected by the *Noerr-Pennington* Doctrine.

### III.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable

7

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a probability requirement; it asks for more than a sheer possibility that the defendant acted unlawfully. *Id.*

In reviewing a motion to dismiss, the Court "accept[s] as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and . . . construe[s] them in a light most favorable to the non-movant." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). The Court should disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements." *Santiago v. Warminster Township*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The Third Circuit has set forth a three-part test for determining whether a complaint may survive a motion to dismiss for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (alteration in original) (quoting *Iqbal*, 556 U.S. at 675, 679).

# IV.

A. *Whether Counterclaim Plaintiffs Stated a Claim under Tiitle VII and NJLAD*

A prima facie case of retaliation under both Title VII and NJLAD requires the complainant to show: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Abramson v. William Paterson College,* 260 F. 3d 265, 286 (3d Cir. 2001); *see also Davis v. City of Newark,* 285 F. App'x 899, 903 (3d Cir. 2008) (internal citations omitted). "Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim." *Schurr v. Resorts Int'l Hotel, Inc.,* 196 F.3d 486, 498 (3d Cir.1999).

Going to the first prong of the prima facie case of retaliation under both Title VII and NJLAD, the Employees have shown they engaged in a protected employee activity. It is well-settled that "the filing of formal charges of discrimination, as well as informal complaints to management are considered protected employee activity." *Abramson v. William Paterson College,* 260 F. 3d 265, 286-88 (3d Cir. 2001). For his part, Piroumian filed a charge of discrimination against the Company with the EEOC on October 14, 2016—before

9

his employment with the Company had ended—and was issued a preservation notice. (ECF No. 55 at ¶ 16). In addition to filing formal EEOC charges after he left the Company, Franchitti pleads that he complained to his manager, and three other senior executives along with the Company's Human Resources Department regarding alleged discriminatory practices in hiring South Asian visa workers from India in U.S. positions and the Company's "practice of engaging in visa fraud in order to carry out this preference." (ECF No. 55 at ¶¶ 27-28). Further, Franchitti maintains that at the time of his termination he was "actively contemplating litigation" against the Company, as evidenced by his meetings with two separate attorneys to discuss his options on the date of his termination. (ECF No. 55 at ¶ 29). As such, this is sufficient to plead the first prong of a prima facie claim of retaliation for both Employees.

As to the second prong of the prima facie case of retaliation under Title VII and NJLAD—whether the underlying Complaint constitutes an adverse action—that is a question before the Court. The Supreme Court has held that Title VII does not limit adverse action to particular activities, but rather is broader in scope. "In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe*

10

*Railway v. White,* 548 U.S. 53, 67-68 (2006). (internal quotes omitted).

Contrary to the Company's contentions, the filing of a lawsuit may be considered a retaliatory act. *Brown v. TD Bank, NA.,* No. 15-5474, 2016 WL 1298973, at *7 (E.D. Pa. Apr. 4, 2016) (citing *Bill Johnson's Rest., Inc. v. NLRB,* 461 U.S. 731, 740-43 (1983). Specifically, a "[a] lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation" and can have a "chilling effect . . . upon an employee's willingness to engage in protected activity." *Bill Johnson's Rest.,* 461 U.S. at 740-43. Litigation is expensive, time-consuming, and demanding. "A reasonable worker, faced with the prospect or reality of a civil action, might well decide to abandon his charges of discrimination rather than move forward." *Brown v. TD Bank, NA.,* No. 15-5474, 2016 WL 1298973 at *7 (E.D. Pa. Apr. 4, 2016). It is undisputed that the Company filed a lawsuit before this Court against the Employees seeking, among other things, the return of all the monies paid to the Employees during their employment with the Company. (ECF No. 2 at 14). This is sufficiently pled for the purposes of a motion to dismiss to constitute a prima facie case of adverse employment action.

Also contrary to the Plaintiffs' contentions, the Court need not determine whether or not the suit was brought with "retaliatory animus and is baseless" in order to determine whether or not the claim is an adverse action; the relevant caselaw pointed to by Plaintiffs—specifically *Berrada v. Cohen*—concerns

whether counterclaims are filed with retaliatory motive. No litigant has asserted that the Counterclaims filed by the Defendants themselves were asserted with retaliatory motive—and indeed, why would they? Defendants claim that the *underlying Complaint* was filed with retaliatory motive, and they filed their counterclaims to the lawsuit as a result. Accordingly, *Berrada* and its progeny are not on point to the issues before the Court. Defendants have sufficiently pled a retaliatory act of the second prong of prima facie case of retaliation under Title VII and NJLAD for the purposes of a motion to dismiss.

As to the third prong of the prima facie case of retaliation under Title VII and NJLAD—the causal link between the protected activity and the adverse employment action—a causal link has been sufficiently pled by Defendants. Although Defendants filed with the EEOC different times, the Defendants together filed no fewer than six complaints or lawsuits against the Company in a variety of different forums alleging different wrongs. (*See supra* Section II(a)). The Defendants claim that thereafter, the Company filed the underlying Complaint in reprisal for their protected activities. (ECF No. 55 at ¶¶ 6; 54; 62-63; 70). Defendants further allege being named in the lawsuit by the Company caused Piroumian and Franchitti to suffer financial harm, emotional anguish, humiliation, and reputational harm. (ECF No. 55 at ¶¶ 6; 54; 62-63; 70). Further, Defendants further state the Company's Complaint in this matter has influenced

employment opportunities with other employers in that employers with knowledge of the suit are hesitant to hire Piroumian and Franchitti. (ECF No. 55 at ¶¶ 54, 62-63, 70). Further, Franchitti pleads that he complained to Company employees and was thereafter retaliated against by (1) the denial of a promotion; (2) the diversion of business away from Franchitti's group; (3) the refusal to reimburse Franchitti for $60,000.00 worth of business expenses; and (4) Franchitti's exclusion from important meetings and then terminating his employment. (ECF No. 55 at ¶ 28). Importantly, both Employees are named plaintiffs in the California Action and had their inboxes produced during discovery in that action. These facts are sufficiently specific for the factfinder to reasonably find a causal connection between the filing of the lawsuit and the protected activities. For the purposes of a motion to dismiss, this satisfies the causal link under prong three of a prima facie retaliation claim.

The Court therefore finds that the Counterclaims filed by Piroumian and Franchitti sufficiently alleges a prima facie case under Title VII and NJLAD and denies the dismissal of this claim.

    B. *Whether the Noerr-Pennington Doctrine applies to Counterclaims*

Plaintiffs argue that Defendants' Counterclaims are barred by the *Noerr-Pennington* Doctrine which protects a company's rights to lobby the government for redress in order to protect its business interests. The Court

declines to extend the *Noerr-Pennington* Doctrine to Title VII claims at this time.

Derived from the First Amendment's guarantee of "the right of the people . . . to petition the Government for a redress of grievances," U.S. CONST. AMEND. I, the *Noerr-Pennington* doctrine arose in relation to antitrust actions holding "'[a] party who petitions the government for redress generally is immune from antitrust liability even if there is an improper purpose or motive.'" *A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc.*, 263 F.3d 239 (3d Cir. 2001), *cert. denied*, 534 U.S. 1081 (2002) (quoting *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. 1999), *cert. denied*, 528 U.S. 871 (1999); *see E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961); *Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). "This immunity extends to persons who petition all types of government entities—legislatures, administrative agencies, and courts." *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d. Cir. 1999). Despite its antitrust origins, Third Circuit cases analogizing and extending *Noerr-Pennington* protections have involved disputes concerning civic or public affairs. *See, e.g., Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 159 (3d Cir. 2001); *Pfizer Inc. v. Giles* (In re Asbestos School Litigation), 46 F.3d 1284 (3d Cir. 1994); *Brownsville Golden Age Nursing Home, Inc. v. Wells,*

839 F.2d 155 (3d Cir.1988).

Generally, *Noerr-Pennington* protection does not extend to "sham" litigation through what is known as the "sham litigation exception"; that is, the Noerr-Pennington doctrine "does not extend to [protect] an objectively '[b]aseless suit [that] conceals an attempt to interfere directly with a competitor's business relationships—through the use [of] the governmental process as opposed to the outcome of that process—as an anticompetitive weapon.'" *Campbell v. Pennsylvania School Boards Association,* 972 F.3d 213, 219 (3d Cir. 2020). A suit is baseless within the meaning of *Noerr- Pennington* if:

> no reasonable litigant could realistically expect success on the merits. If a reasonable litigant could conclude that its suit is reasonably calculated to elicit a favorable outcome, then the suit is protected by *Noerr-Pennington*. If, however, the challenged litigation is objectively meritless, then the court may consider the litigant's subjective motivation. A plaintiff must first disprove the challenged lawsuit's objective legal viability before we may consider the subjective components of the sham litigation.

*Brown v. TD Bank, NA.,* No. 15-5474, 2016 WL 1298973 at *7 (E.D. Pa. Apr. 4, 2016) (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 56, 60-61 (1993)).

It is worth noting that, although the Third Circuit has not explicitly ruled as to the applicability of a *Noerr-Pennington* defense to retaliation claims under Title VII, the Third Circuit declined to apply the *Noerr-Pennington* doctrine to

Title VII in 1999, noting that this was "in part because the prohibition on retaliation is so explicit and the public policy behind the retaliation provision so compelling." *Durham Life Insurance Co. v. Evans*, 166 F.3d 139, 157 (3d Cir. 1999).

The Court is unprepared to extend *Noerr-Pennington* protections to the Title VII context given the strong policy considerations undergirding Title VII put forth by the Third Circuit in *Durham* life. Specifically, the Third Circuit has signified that "the interpretive lodestars of text and purpose militate toward fully including retaliatory lawsuits in Title II's anti-retaliation cause of action." *Lin v. Rohm & Hass Co.*, No. 11-3158, 2014 WL 1414304, at *9 (E.D. Pa. Apr. 14, 2014), *aff'd*, *Lin v. Rohm & Haas Co.*, No. 16-1887, 2017 WL 4764798 (3d Cir. Apr. 14, 2017).

Even if the Court were prepared to extend it to the Title VII arena, it is premature at this point in litigation to decide whether Plaintiffs' claims in this suit constitute a "sham." While it is possible to determine the applicability of *Noer-Pennington* at the motion to dismiss stage, determining whether the suit is "'objectively and subjectively baseless' . . . turns upon issues of reasonableness and intent-issues" which are premature to consider upon the current, undeveloped record. *Otsuka Pharmaceutical Co., Ltd. v. Torrent Pharmaceuticals Ltd., Inc.*, 118 F.Supp.3d 646, 657 (D.N.J. 2015). For instance, there are disputes of fact concerning the other Company employees who were not sued for not returning

their Company laptops; the Company represents that there were certain situations where the "laptops were obsolete" and that the Company had the ability to "wipe laptops or to change the log in so that these individuals would not have been able to go in their laptop." (T28:12-20). Whether or not the Company sued other similarly-situated employees would be relevant to the Court's inquiry into whether the underlying lawsuit constitutes a "sham" both objectively and subjectively.

Therefore, the Court declines to extend the *Noerr-Pennington* affirmative defense to Title VII claims, and the motion to dismiss the Counterclaims on the basis of the *Noerr-Pennington* doctrine is similarly denied.

## ORDER

**THIS MATTER** having come before the Court on Plaintiffs' motion to dismiss Counterclaim (ECF No. 61); and the Court having carefully reviewed and taken into consideration the submissions of the parties; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this 2nd day of November, 2023,

**ORDERED** that Plaintiffs' Motion to Dismiss (ECF No. 61) is **DENIED**.

*/s/ Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.