## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

COGNIZANT TECHNOLOGY
SOLUTIONS CORPORATION and
COGNIZANT TECHNOLOGY
SOLUTIONS U.S. CORPORATION,

      Plaintiffs,

v.

JEAN-CLAUDE FRANCHITTI, and
VARTAN PIROUMIAM

      Defendants.

No. 3:21-CV-16937-PGS-RLS

**DEFENDANTS JEAN-CLAUDE FRANCHITTI AND VARTAN PIROUMIAN'S BRIEF IN SUPPORT OF THEIR MOTION FOR SANCTIONS AND TO ENFORCE THE COURT'S DECEMBER 8, 2023 ORDER**

Motion Day: May 20, 2024

Hon. Rukhsanah L. Singh

Jonathan Rudnick, Esq.
**LAW OFFICES OF JONATHAN RUDNICK, LLC.**
788 Shrewsbury Avenue
Tinton Falls, NJ 07724
Telephone: (732) 842-2070

Daniel A. Kotchen (*pro hac vice*)
Mark Hammervold (*pro hac vice*)
Lindsey Grunert (*pro hac vice*)
Amanda Burns (*pro hac vice*)
**KOTCHEN & LOW LLP**
1918 New Hampshire Ave. NW
Washington, DC 20009
Telephone: (202) 471-1995

# **TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND ................................................................. 3

    A.   Cognizant's Structured Asset Recovery Process ................................... 3

    B.   Cognizant's Deviation from the Asset Recovery Process. ..................... 6

    C.   The Court's December 8, 2023 Order. .................................................. 8

    D.   Cognizant's Continued Discovery Misconduct. .................................. 15

II.  LEGAL STANDARD ................................................................... 16

III. ARGUMENT .................................................................................. 16

    A.   Rule 37(b) Sanctions Should Be Awarded For Cognizant's Failure to Obey the Court's Discovery Order. ...................................................... 18

    B.   Cognizant Should Be Sanctioned For Its Improper Rule 26(g) Certification. ......................................................................................... 21

    C.   Cognizant Should Be Precluded from Using Information It Failed to Disclose in Response to Interrogatory No. 1 Under Rule 37(c). .......... 23

    D.   Cognizant Should Be Sanctioned Under 28 U.S.C. § 1927 for Multiplying Proceedings. ................................................................... 24

    E.   Sanctions Are Also Appropriate Under the Court's Inherent Powers. . 26

    F.   Defendants' Request for Sanctions. .................................................... 27

IV.  CONCLUSION ............................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*Bistrian v. Levi*, No. 08-3010, 2022 WL 888878 (E.D. Pa. Mar. 25, 2022)..... 21, 26

*Bracey v. Valencia*, No. 19-1385, 2022 WL 1570812 (W.D. Pa. May 18, 2022).. 24

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)...................................................... 16

*Choice Is Yours, Inc. v. Choice is Yours*, No. 14-1804, 2017 WL 11550162 (E.D. Pa. Jan. 23, 2017)................................................................................................ 22

*Derzack v. Cnty. of Allegheny, Pa.*, 173 F.R.D. 400 (W.D. Pa. 1996) ................... 26

*GMAC Bank v. HTFC Corp.*, 252 F.R.D. 253 (E.D. Pa. 2008).............................. 26

*Gonzales v. City of Albuquerque*, No. 09-0520 JB/RLP, 2010 WL 553308 (D.N.M. Feb. 9, 2010) ..................................................................................... 19, 21

*Hancock Waste Removal, Inc. v. Quickway, Inc.*, Civ.A. No. 83–4812, 1986 WL 2780 (E.D. Pa. Feb. 27, 1986) .......................................................................... 20

*Hawthorne v. Municipality of Norristown*, No. 15-01572, 2016 WL 1720501 (E.D. Pa. Apr. 29, 2016)................................................................................................ 25

*In re Atomica Design Grp., Inc.*, 591 B.R. 217 (E.D. Pa. 2018) ............................ 20

*In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3d Cir. 2008) ...................... 24, 25

*In re Tutu Wells Contamination Litig.*, 162 F.R.D. 46 (D.V.I. 1995) .................... 24

*Itel Containers Int'l Corp. v. Puerto Rico Marine Mgmt., Inc.*, 108 F.R.D. 96 (D.N.J. 1985) .............................................................................................................. 25, 26

*Lion Brewery of N.Y. City v. The Lion, Inc.*, 16 F.Supp. 133 (M.D. Pa. 1936) 19, 21

*Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628 (E.D. Pa. 1977) ................... 19

*Parrick v. FedEx Ground Package Sys., Inc.*, No. CV 09-95, 2010 WL 3724825 (D. Mont. Sept. 17, 2010) .................................................................................... 27

*Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77 (E.D. Pa. 1992) ..................... 22

*Reilly v. Home Depot U.S.A., Inc.*, No. 20-13030 (NLH/AMD), 2023 WL 3043885 (D.N.J. Apr. 20, 2023) ..................................................................................... 24

*Simmonds as next of friend to DH v. Evans*, No. 1:22-cv-00051, 2023 WL 6880139 (D.V.I. Oct. 17, 2023)................................................................................... 23

*Sines v Kessler*, 339 F.R.D. 96 (W.D. Va. 2021) .................................................. 27

*Smith v. Bic Corp.*, No. 87–0795, 1988 WL 71362 (E.D. Pa. July 1, 1988) .......... 23

*Unimaven, Inc. v. Tex. TR*, No. 17-12008 (SDW) (LDW), 2020 WL 5406162 (D.N.J. Sept. 8, 2020) .......................................................................................... 20, 21

*Watchel v. Health Net, Inc.*, 239 F.R.D. 81 (D.N.J. 2006) .............................. 16, 23

*Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692 (D.N.J. 2015) ..................... 19, 21, 22, 24

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 505 F.Supp. 1190 (E.D. Pa. 1980) ........................................................................................................... 19

**Statutes**

28 U.S.C. § 1927 ................................................................................................ 3, 24

**Rules**

Fed. R. Civ. P. 26 ........................................................................................... passim

Fed. R. Civ. P. 33 ................................................................................................. 18

Fed. R. Civ. P. 37 ........................................................................................... passim

Plaintiffs Cognizant Technology Solutions Corporation and Cognizant Technology Solutions U.S. Corporation ("Plaintiffs" or Cognizant") maintain a structured, organized Asset Recovery Process managed by its in-house Asset Recovery Team that is designed to: (a) secure the return of Cognizant-issued laptops (and other assets) after employees leave the company; or (b) formally designate laptops as "non-recoverable" in internal Cognizant records, a designation that requires approval from at least two department heads for "cases" of unreturned laptops to be officially "closed." Thousands of employees have left Cognizant during the relevant time period, and many, it appears, have kept Cognizant laptops (which house confidential Cognizant documents). Cognizant has never before sued any of these former employees.[1]

Until now. This lawsuit is the first of its kind: a lawsuit challenging Defendants' compliance with legal instructions and duty to preserve documents stored and backed-up on Cognizant-issued laptops that Defendants had actually returned upon their departure from Cognizant. Little question exists that Cognizant filed this lawsuit to retaliate against Defendants and to coerce them into dropping

---

[1] *See* Defs.' Counterclaims ¶ 44 (Dkt. 79-1); Pls.' Ans. to Counterclaims ¶ 44 (Dkt. 98) (admitting to not having sued four former employees who Cognizant is aware retained their company laptops upon their departure from Cognizant); Ex. 4 at 7-12 (supplemental Interrogatory answer admitting same); Prowell 30(b)(6) Dep. Tr. 29:9-17 (Mar. 29, 2023) (Ex. 3) ("I am not aware of any [lawsuit] other than this particular matter" "filed against any former employee who retained Cognizant assets or confidential documents"); Dkt. 74 at 17.

class discrimination and visa fraud claims, as evidenced perhaps most directly by Cognizant's efforts to join Ann Cox in this lawsuit just after her late husband's death, ending its pursuit only after Ms. Cox herself died.[2]

On December 8, 2023, this Court ordered Cognizant to identify all former employees whom Cognizant is aware kept their assets or documents upon their departure from Cognizant from 2016 through 2021, and all efforts undertaken to seek return of those assets or documents, as requested in Defendant Franchitti's Interrogatory No. 1. Dkt. 94 at 2. Cognizant's Asset Recovery Team, working with various departments, is tasked with identifying unreturned assets and seeking their return. While Cognizant keeps various records responsive to this Interrogatory, complying with the Court's Order would be exceedingly damaging to Cognizant's defenses in the *Palmer* class action and *Franchitti* visa fraud case, as well as its claims and defenses in this lawsuit. To make matters worse for Cognizant, at the time of the Court's Order, a February 20, 2024 trial was scheduled in *Palmer* where evidence of this retaliatory lawsuit would be introduced. Cognizant made the calculated decision to defy the Court's Order, and rather than providing a complete and accurate answer to the Interrogatory on January 31, 2024, Cognizant simply repeated information that Defendants already knew (identifying *just four* individuals—ESI custodians in *Palmer*—whom the parties were aware retained their

---

[2] Defs.' Counterclaims ¶ 44 (Dkt. 79-1).

Cognizant laptops) and claimed that it was unable to provide additional—and complete—information because "the only" responsive information it possessed resided in a 715,000-line log that was too cumbersome to review.

Cognizant's representations to Defendants and the Court were false and its decision to disobey the Court's December 8, 2023 Order is the exact type of bad faith litigation conduct that requires sanctions. Pursuant to Federal Rules of Civil Procedure 37 and 26, 28 U.S.C. § 1927, and under the Court's inherent power, Defendants move for sanctions, seeking an order enforcing the Court's December 8 discovery order, an adverse inference, fees and costs associated with this Motion and Defendants' prior Motion to Compel (Dkt. 74), disallowing Cognizant's use of the withheld information, and precluding Cognizant from filing a motion for summary judgment as to Defendants' counterclaims.

## I. FACTUAL BACKGROUND

### A. Cognizant's Structured Asset Recovery Process

Cognizant has a formal "Asset Recovery Team" ("ART") responsible for collecting unreturned Cognizant laptops (and other devices) from former employees on which Cognizant documents are stored.[3] ART follows a formal "Asset

---

[3] *See, e.g.*, Exs. 7-8 (emails from the Asset Recovery Team to Defendant Piroumian following his termination seeking the return of his Cognizant laptop); Ex. 9 at 218 (Cognizant's April 2016 Corporate E-Mail Usage Policy instructing employees to "manage their mailboxes efficiently by . . . moving [mailboxes] to Personal Storage

"[R]ecovery [P]rocess" to recover laptops. Ex. 10 at 2431. To begin, ART is provided with a "Separation list from the H[uman] R[esources] [("HR")] team." *Id.* ART then follows up with exiting employees before their last date with Cognizant seeking the return of laptops using Cognizant's "Asset Recovery Application."[4] If laptops are not returned upon employees' departure from Cognizant, the "HR team" gives ART personal email addresses to send asset return reminders to the departed employees. *Id.*; *see, e.g.*, Exs. 7-8. Cognizant meticulously tracks the dates on which ART sends follow-up emails to former employees,[5] and if an employee's laptop remains unreturned, a "legal letter" is then sent.[6] If laptops remain unreturned following this legal letter, ART seeks "confirmation from HR & NSS [Network Security Services] head" to "mark th[e] Assets as not recoverable," and "department head" approval is also required in order to make this designation. Ex. 10 at 2431. Once so marked,

_____

File (PST) on their local system . . . so that they are not running out of the allocated quota space").

[4] *Id.* ("IT team follows up with the end user to return the laptop till their last date using Asset Recovery Application.").

[5] Ex. 11 (email attaching excel of "HR Escalated Asset Recovery Cases as of date" which "contains old cases from 2014 as well"); Ex. 12 (excerpt of attached excel tracking dates each of three follow-up emails were sent to departed employees who retained their Cognizant assets).

[6] Ex. 13 ("We have not yet received the attached Laptops even after we escalate[d] it to HR for legal letter process. Please suggest if we can mark these Assets as unrecoverable and close these cases."); Ex. 14 (excel tracking follow-up date of email to departed employee regarding retained assets, along with escalation mail date).

"cases" involving unreturned laptops are "closed."[7] As reflected in the below email excerpt, formal written approvals are sought to designate laptops as "Non-Recoverable" per Cognizant's "Audit process:"

> Please find below the list of 74 laptop cases that has not been returned by the Associates and it has been escalated to HR point of contact – Unni, Satish (Cognizant). PFA email escalated to HR for your reference.
>
> Kindly help us with your approval to remove the allocation and mark these Assets as Non-Recoverable. As per Audit process, it is mandate that we need the approval from respective department head to approve for all the assets which are not recoverable.[8]

The title of the five attachments to this email reveal that Cognizant, in seeking approval to mark assets as "non-recoverable," keeps meticulous records of its follow-up efforts with departed employees, and also records of assets that remain unreturned despite these efforts, including spreadsheets/logs containing lists of non-returned assets.[9]

Cognizant's corporate witness in this case testified that ART maintains a

---

[7] *Id.* ("As per Audit process, it is mandate that we need the approval from respective department head to approve for all the assets which are not recoverable."); Ex. 13 ("We have not yet received the attached Laptops even after we escalate[d] it to HR for legal letter process. Please suggest if we can mark these Assets as unrecoverable and close these cases.").

[8] Ex. 10 at 2431.

[9] *See id.* (identifying five attachments, including an attachment labeled "Escalated Assets List_Non Recoverable.xlsx"); Ex. 15 (excerpt of "Escalated Assets List_Non Recoverable.xlsx," which contains a list of 74 non-returned assets).

formal log identifying when former employees return assets and identifying when assets are in fact not returned.[10]

## B.  **Cognizant's Deviation from the Asset Recovery Process.**

Cognizant deviated from the Asset Recovery Process in two ways that are material to this motion. First, Cognizant did not follow the process with respect to four key executives, all of whom were agreed-upon discovery custodians in the *Palmer*[11] litigation: Mohan Ramachandran, Vipul Khanna, Nandagiri Narasimha Srinivas, and Venugopal Lambu. Each of these executives left the company well after the *Palmer* court denied Cognizant's motion to dismiss the class lawsuit in September 2018,[12] and kept their laptops on which they stored confidential Cognizant documents. Cognizant made no effort to recover their laptops,[13] and failed to follow the company's standard Asset Recovery Process for these departed employees. By not recovering their laptops, Cognizant ensured that documents stored on the laptops would not be discoverable. This proved exceedingly prejudicial

---

[10] Ex. 3 13:2-3, 14:1-20 (stating that "IT keeps a log of the devices that are returned to Cognizant when an employee leaves" and that the logs "show[] when an employee . . . has not returned a device").

[11] *Palmer v. Cognizant Tech. Sols. Corp.*, No. 2:17-cv-6848 (C.D. Cal.).

[12] Kotchen Decl. ¶ 2.

[13] *See* Ex. 4 at 7, 8, 9 (stating, with respect to these custodians' laptops, Cognizant is "unable to identify the specific steps it took to retrieve th[em]").

not only to the plaintiffs in the *Palmer* case, who were denied documents from key ESI custodians,[14] but also to the relator in the *Franchitti* visa fraud case.

For example, Mohan Ramachandran served as the head of Cognizant's immigration group, and is the single most important ESI custodian in both cases, as he led the efforts to secure visas for Cognizant's Indian employees, a prerequisite for them to work in the U.S. Cognizant's discriminatory prioritization of Indian visa employees for U.S. roles is a central issue in the *Palmer* action, and Cognizant's commission of alleged visa fraud in order to secure those visas is at issue in *Franchitti*. Mr. Ramachandran left Cognizant on April 30, 2021, six months after the *Franchitti* visa fraud complaint was unsealed and ten months after Cognizant agreed that he would be a discovery custodian in *Palmer*. Kotchen Decl. ¶ 2. While Cognizant was well underway in deciding to sue Defendants when Mr. Ramachandran left Cognizant,[15] it made no efforts to recover his laptop and lost

---

[14] The *Palmer* court sanctioned Cognizant for discovery misconduct and the loss of this (and other) custodial ESI. *See* Order at 15-18, Dkt. 235, *Palmer v. Cognizant Tech. Sols. Corp.*, No. 2:17-cv-06848-DMG-PLA (C.D. Cal. Dec. 29, 2021) ("Based on the circumstances herein, this Court finds that key documents from critical custodians have likely been lost, destroyed, and/or not timely produced as a result of Cognizant's discovery actions and inactions, and that plaintiffs have been prejudiced as a result. Additionally, plaintiffs have presented sufficient evidence[] . . . to support a strong inference of defendants' intent to deprive plaintiffs of the use of those documents in this litigation, or at a minimum of defendants' gross negligence.").

[15] *See* Dkt. 117-1 (logging as privileged 134 communications and documents on Cognizant's privilege log between and among counsel concerning the filing of this lawsuit prior to Mr. Ramachandran's departure from Cognizant).

documents after he left the company, in direct contravention of Cognizant's representations in *Palmer*.[16] Cognizant then promptly sued Defendants after Mr. Ramachandran's departure without, of course, suing Mr. Ramachandran.

Second, Cognizant departed from its standard Asset Recovery Process by suing Defendants and seeking to sue Edward Cox, and then his widow, Ann Cox, after Cognizant learned that Ms. Cox intended to pursue her late husband's discrimination claims in *Palmer* after his death. Cognizant had never before sued any former employee who retained his or her Cognizant laptop or documents, and nowhere in the Asset Recovery Process is there any discussion about Cognizant actually suing former employees who retained laptops that stored Cognizant documents.

## C.    The Court's December 8, 2023 Order.

In discovery, Defendant Franchitti issued an Interrogatory seeking information concerning employees who retained their Cognizant assets or confidential Cognizant documents following their departure from the company, the steps Cognizant took to retrieve those assets or documents, and Cognizant's decision not to sue those individuals. Ex. 1 at Interrog. 1. This Interrogatory was designed to discover relevant information refuting Cognizant's claim that it has suffered

---

[16] *See* Ex. 5 at 2; Ex. 6 at 4 ("Cognizant has been unable to (but is still attempting to) locate these laptops: . . . R. Mohan . . . [and] Venugopal Lambu").

"irreparable harm" as a result of Defendants' retention of their Cognizant documents (as required by law, the EEOC's instruction to preserve documents, and Cognizant's own corporate policies),[17] for which Cognizant seeks to divest Defendants of the entirety of their Cognizant earnings.[18] The Interrogatory also sought information relevant to Defendants' counterclaims and Cognizant's true motivation for bringing this lawsuit—to retaliate against Defendants and to intimidate and/or coerce them into dropping their lawsuits against Cognizant.

Cognizant refused to answer the Interrogatory. *See* Ex. 2 at Ans. 1 (objecting on burden and relevance grounds, and, while citing Rule 33(d), producing no documents). Defendants moved to compel on May 26, 2023. *See* Dkt. 74.

In opposing Defendants' Motion to Compel, Cognizant made no mention of ART or its structured Asset Recovery Process by which assets are formally deemed "Non-Recoverable" after approval from at least two department heads, with Cognizant's internal records being updated accordingly. Instead, Cognizant falsely

---

[17] *See* Fed. R. Civ. P. 37; Fed. R. Civ. P. 37 Advisory Committee Note (2015 amendments) ("potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable"); Defs.' Counterclaims ¶ 17 (Dkt. 79-1); Handbook at 33 (Ex. 4 to Complaint); Ex. 3 72:1-18 ("Employees are to comply and preserve documents in anticipation to litigation when instructed," including by the EEOC).

[18] *See* Compl. ¶¶ 16, 18, 48, Prayer for Relief (c) (Dkt. 1-2) (seeking "[t]he return of all financial compensation paid to Defendants during their employment with Cognizant" which spanned almost ten years for Defendant Franchitti and over five years for Defendant Piroumian).

represented to the Court that:

> There is generally no way for Cognizant to know if a former employee
> has failed to return Cognizant's confidential information upon their
> separation from the Company, absent extenuating circumstances such
> as those present in this case[.]
>
> . . .
>
> The only information that Cognizant possesses that in any way
> responds to this Interrogatory is a log that Cognizant maintains that
> tracks assets (not confidential information) issued to Cognizant
> employees worldwide since November 2019. This log contains nearly
> 715,000 entries for devices issued in the United States alone and
> contains virtually none of the specific information requested by
> Defendant Franchitti. To even begin to provide the information that
> Defendants seek, Cognizant would have to conduct a line-by-line
> analysis of the log with a cross reference to a separate database
> depicting whether an employee still remains with the Company to
> determine whether an asset has or has not been returned to the Company
> following an employee's departure.[19]

The Court rejected Cognizant's argument[20] and, on December 8, 2023, issued

an Order compelling Cognizant to supplement its answer to Interrogatory No. 1 and

to provide, for the time period of January 2016 through December 2021:

> the name, employee ID, job title, and date of departure of any Cognizant
> employee that Cognizant is aware retained Cognizant assets and/or
> confidential documents upon departure from the company, the steps
> Cognizant took to retrieve the assets or confidential documents that
> Cognizant is aware were taken, an identification of whether or not those
> assets and/or confidential documents were returned, and, if the assets

---

[19] *Id.* at 39-40.

[20] In rejecting Cognizant's argument, the Court specifically considered any
purported burden with cross-referencing the log with other data (to the extent so
required to identify employees who retained their Cognizant assets), and limited the
temporal period of Cognizant's answer accordingly. Oral Opinion Tr. 14:22-15:1
(Dec. 7, 2023) (Dkt. 99); Dkt. 94 at 2.

and/or confidential documents were not returned, whether Cognizant filed a lawsuit against those employees who Cognizant was aware retained such Cognizant assets and/or confidential documents.[21]

Cognizant provided its supplemental answer to Interrogatory No. 1 on January 31, 2024. *See* Ex. 4 at Supp. Ans. 1.[22] However, Cognizant's answer did not comport with the Court's discovery order and suffered from a number of deficiencies.

Specifically, Cognizant's answer identified *only the four ESI custodians from Palmer*[23] that Defendants already knew retained their assets (as it formed the basis of the *Palmer* court's sanctions order against Cognizant) as well as Defendants themselves and Edward Cox. Ex. 4 at 7-12. That is, Cognizant provided no information new to Defendants, which would have been harmful to Cognizant in *Palmer*, *Franchitti*, and here. In so responding, Cognizant refused to consult its asset log and documentation concerning ART's retrieval efforts (including the issuance of notices, follow-up emails, and legal letters to departed employees). Instead, to

---

[21] Dkt. 94 at 2.

[22] Notably, at the time Cognizant was preparing its supplemental answer, the parties were set to begin trial in the *Palmer* class action on February 20, 2024. By providing an incomplete answer, Cognizant ensured that information undoubtedly harmful to Cognizant's defenses in that case would not be produced in advance of trial.

[23] Cognizant also identified Defendant Piroumian, incorrectly claiming that he did not return his Cognizant laptop following his termination. Ex. 4 at 10 ("Piroumian stated that he returned the Cognizant-issued laptop via FedEx, but Cognizant was not able to locate the laptop."). However, in the *Palmer* class action, the *Palmer* plaintiffs provided Cognizant with the FedEx tracking slip for Mr. Piroumian's laptop return. *See* Ex. 16. It appears that Cognizant has misplaced Mr. Piroumian's laptop.

prepare its answer, Cognizant simply spoke to employees in Cognizant's IT department who claimed they themselves were not aware of any additional responsive information beyond that which had already been disclosed to Defendants. Kotchen Decl. ¶ 3. Cognizant's justification for not consulting the log was that it is "lengthy" and has to be cross-referenced with the company's employment records to determine whether the employee who has not returned the laptop has departed the company (a statement that is contradicted by Cognizant's own corporate representative's testimony that the log itself shows whether or not an asset has been returned). *Id.*[24] But the Court considered this burden argument,[25] and addressed it by limiting the temporal scope of Cognizant's supplemental answer from January 2016 to the present (as set forth in the Interrogatory), to January 2016 through December 2021 (when Cognizant gained the ability "to wipe company-issued devices remotely so that no Cognizant confidential information could be accessed by a former employee" (Dkt. 74 at 39)). The Court's Order did not contain a carveout exempting Cognizant from consulting the log to answer the Interrogatory.

---

[24] *See* Dkt. 74 at 40 (noting that Cognizant would have to "cross reference [the log] to a separate database depicting whether an employee still remains with the Company to determine whether an asset has or has not been returned to the Company following an employee's departure").

[25] Oral Opinion Tr. 14:22-15:1 (Dec. 7, 2023) (Dkt. 99) ("[T]he Court recognizes the overbreadth nature . . . of the specific request" and "therefore[] limits any response to Defendant Franchitti's Interrogatory Number 1 to apply to the time period of January, 2016 through December, 2021").

In the verification attached to the Interrogatory response, Cognizant was careful to ensure that the response should not be read as if it were complete, suggesting it in fact knew that "more accurate information is available:"

> These responses, subject to inadvertent or undiscovered errors, are based upon and, therefore, limited by, the records and information still in existence, presently collected, and thus far discovered in the course of the preparation of these responses; consequently, Cognizant reserves the right to make changes in the responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available[.][26]

The verification attached to Cognizant's court-ordered supplemental answer was signed by Valerie Prowell who, in the *Palmer* action, "coordinated the search for and collection of available custodial documents from Laptops . . . as required by the Court's December 29, 2021 [sanction] order."[27] Ms. Prowell therefore had personal knowledge of information responsive to Interrogatory No. 1, but Cognizant failed to disclose it.

Even after issuing its deficient answer, Cognizant continues to misrepresent to the Court what information is available that is responsive to Interrogatory No. 1. For example, Cognizant's corporate representative (Ms. Prowell) testified that Cognizant's log "show[s] when an employee . . . has not returned a device," which

---

[26] Ex. 17.

[27] *See* Prowell Decl. ¶ 2, Dkt. 244-1, *Palmer v. Cognizant Tech. Sols. Corp.*, No. 2:17-cv-06848-DMG-PLA (C.D. Cal. Jan. 19, 2022).

is contrary to Cognizant's representation to the Court that the log needs to be cross-referenced with other data to determine whether a departed employee retained his or her Cognizant assets.[28] Ms. Prowell also testified that when an employee departs the company and retains his or her laptop, Cognizant's IT department "issues a notice to the ex-employee to return the device."[29] This is in accord with Cognizant's own documentation which confirms that the company has a dedicated team (ART) and structured approach to seeking the return of Cognizant assets, including by sending emails and notices to employees both before and after their departure from the company, along with legal letters when assets remain unreturned. Cognizant's representation to the Court, therefore, that the log is "[t]he only information that Cognizant possesses that in any way responds to th[e] Interrogatory" is false. Dkt. 74 at 39.

---

[28] Ex. 3 14:8-15; *compare id.* 13:2-3 ("IT keeps a log of the devices that are returned to Cognizant when an employee leaves"), *and* 14:1-15 ("[T]here is a log that exists of when devices were returned . . . showing when an employee . . . has not returned a device"), *with* Dkt. 74 at 40 ("Cognizant would have to conduct a line-by-line analysis of the log with a cross reference to a separate database depicting whether an employee still remains with the Company to determine whether an asset has or has not been returned to the Company following an employee's departure."); *see also* Ex. 3 14:16-20 ("Q There's a log that reflects if an employee has not returned a device? A Correct. Q And does IT keep that? A Correct.").

[29] Ex. 3 14:8-13 ("It's my understanding that IT, within the asset group, issues a notice to the ex-employee to return the device.").

Cognizant's concealment of information responsive to this Interrogatory, and the timing of Cognizant's issuance of its supplemental answer on January 31, 2024 is also illustrative of Cognizant's discovery misconduct. The deficient supplemental answer was being prepared when the *Palmer* trial was set to commence on February 20, 2024 (on January 23, 2024 the trial was postponed), thereby ensuring that information harmful to Cognizant's defenses in that case remained (and still remains) undisclosed.

**D.      Cognizant's Continued Discovery Misconduct.**

Cognizant continues to make misrepresentations to the Court regarding its asset log. During the parties' March 6, 2024 status conference (Dkt. 108), and in its March 22, 2024 *ex parte* submission to the Court, Cognizant reiterated its claim that the only responsive information it possessed to this Interrogatory resided in a 715,000-entry log and that reviewing the log was not proportional to the needs of the case. *See* Ex. 18 ("[W]e will be submitting the Master Device Log along with an explanation of the log and why the document is not relevant or proportional under Rule 26 [for *in camera* review]."). But these claims are belied by Cognizant's (a) own corporate representative's testimony that Cognizant maintains a log that tracks whether or not assets have been returned by departed employees, and (b) structured Asset Recovery Process overseen by ART, as detailed above. At this juncture, it appears that Cognizant is attempting to re-argue its failed opposition to Defendants'

Motion to Compel in the hopes that the Court will reverse its December 8, 2023 Order. But that is improper, and should be rejected.

## II.   LEGAL STANDARD

"The Court has broad discretion regarding the type and degree of sanctions it can impose" in light of a party's discovery misconduct, provided that "the sanctions [are] just and related to the claims at issue." *Watchel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006). "The Court also has inherent power to police litigant misconduct and impose sanctions on those who abuse the judicial process. These inherent powers exist in addition to the formal rules and legislative dictates designed to assist district courts in their truth-seeking process." *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

## III.   ARGUMENT

Cognizant cannot legitimately dispute that Interrogatory No. 1 seeks highly relevant information probative of the claims, defenses, and counterclaims at issue in this case. Nor can Cognizant legitimately dispute that it has a formal Asset Recovery Team that maintains information responsive to this Interrogatory concerning employees who have retained their Cognizant assets and Cognizant's efforts to retrieve those assets, a process which culminates in department head approval to deem assets "Non-Recoverable" and to be so marked on Cognizant's asset log. Despite the relevance of the interrogatory and the ease with which Cognizant can

access responsive information, Cognizant: (1) refused to answer the interrogatory in the first instance; (2) in ensuing discovery briefing, falsely claimed to the Court that "[t]he only information that Cognizant possesses that in any way responds to this Interrogatory is a log that Cognizant maintains that tracks assets" but "[t]o even begin to provide the information that Defendants seek, Cognizant would have to conduct a line-by-line analysis of the log with a cross reference to a separate database;[30] (3) with the *Palmer* trial looming, made the calculated decision not to comply with the Court's December 8, 2023 Order; and (4) during the March 6 hearing and in its *ex parte* submission to the Court, petitioned the Court again not to require Cognizant to have to respond to the interrogatory on grounds of burden and disproportionality (the very same failed arguments it made in its May 26, 2023 briefing opposing Defendants' Motion to Compel (Dkt. 74)).

Cognizant has elected not to correct its misrepresentations to the Court and continues to willfully disregard the Court's December 8, 2023 Order—conduct that has now forced Defendants to seek an order enforcing that discovery order. Sanctions are merited on five separate grounds.

---

[30] Dkt. 74 at 39-40.

**A.** **Rule 37(b) Sanctions Should Be Awarded For Cognizant's Failure to Obey the Court's Discovery Order.**

Sanctions under Federal Rule of Civil Procedure 37(b) are required for Cognizant's failure to obey the Court's December 8, 2023 Order (Dkt. 94). *See* Fed. R. Civ. P. 37(b) (outlining available sanctions where a party "fails to obey an order to provide or permit discovery"). In its supplemental answer to Interrogatory No. 1, Cognizant has failed to identify, from January 2016 through December 2021, all former employees who it "is aware retained Cognizant assets and/or confidential documents upon departure from the company, [and] the steps Cognizant took to retrieve the assets or confidential documents." Dkt. 94 at 2. Despite having a formal Asset Recovery Team that meticulously tracks assets that go unreturned, sending notices, follow-up emails, and legal letters to departed employees, and maintaining an asset log that documents "non-retrievable" assets only after approval from at least two department heads, Cognizant elected not to disclose any additional information other than that which had been discovered in *Palmer* and for which Cognizant was sanctioned. Instead of consulting its own detailed corporate records to comply with the Court's December 8 Order, and speaking with members of ART, Cognizant claims to have relied only on the *personal knowledge* of members of the IT department. Kotchen Decl. ¶ 3.

But this is improper, as a corporation answering an interrogatory must "furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B); *see*

18

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 505 F.Supp. 1190, 1257 n.82 (E.D. Pa. 1980) ("[a] corporation's answers [to interrogatories] must speak as of the composite knowledge of the party" because, "in a large corporation, no single official is likely to have knowledge of the affairs of the entire corporate body") (citation omitted). "A party responding to interrogatories cannot meet its obligations by sticking its head in the sand and refusing to look for answers" as Cognizant has done here. *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 705 (D.N.J. 2015); *see Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977) (a party "cannot plead ignorance to information that is from sources within [its] control"); *Lion Brewery of N.Y. City v. The Lion, Inc.*, 16 F.Supp. 133, 134 (M.D. Pa. 1936) ("If the information [sought by an interrogatory] is not within the personal knowledge of [a party's] officers, but disclosed in documents in [its] possession, the interrogatories must be answered."); *Gonzales v. City of Albuquerque*, No. 09-0520 JB/RLP, 2010 WL 553308, at *8 (D.N.M. Feb. 9, 2010) ("The Defendants must make a reasonable effort to answer these interrogatories, including talking to employees and looking at documents").

Sanctions here are clearly warranted for Cognizant's failure to obey the Court's discovery order and courts have awarded sanctions in similar circumstances where a party's "lackluster and half-hearted effort to comply with the [court's] Order . . . resulted in a substantially deficient response." *Younes*, 312 F.R.D. at 711-14

(awarding attorneys' fees and costs, and admonishing defendant where its "response to the Court's Order was woefully incomplete and non-responsive" and representations made in its answer "w[ere] false"); *Hancock Waste Removal, Inc. v. Quickway, Inc.*, Civ.A. No. 83–4812, 1986 WL 2780, at *1-2 (E.D. Pa. Feb. 27, 1986) (awarding attorneys' fees and costs under Rule 37(b)(2) where Defendant provided "inadequate" responses to interrogatories in violation of a Court order).[31]

Cognizant's failure to comply with the Court's Order was not substantially justified as "a reasonable person would [not] conclude that parties could differ as to whether disclosure was required" in light of the clear language of the Court's Order (which did not discharge Cognizant's duty to consult the log or other documents when answering the Interrogatory), the relevance of the requested information to the claims, defenses, and counterclaims at issue in the case, the timing of the incomplete answer, which was designed to shield Defendants from information harmful to Cognizant's defenses in *Palmer*, *Franchitti*, and here, and the controlling law. *See In re Atomica Design Grp., Inc.*, 591 B.R. 217, 233, 236 (E.D. Pa. 2018) (party's withholding of responsive documents in violation of a court order was not

---

[31] *See also Unimaven, Inc. v. Tex. TR*, No. 17-12008 (SDW) (LDW), 2020 WL 5406162, at *11 (D.N.J. Sept. 8, 2020) (imposing monetary sanctions of attorneys' fees where party withheld discovery in violation of the court's orders); *Argonaut Ins. Co. v. I.E., Inc.*, No. CIV. A. 97–4636, 1999 WL 179808, at *1-2 (E.D. Pa. Mar. 11, 1999) (granting motion for sanctions where defendant violated a court order requiring "full and complete answers to Plaintiff's discovery requests").

"substantially justified" where "[a]ny reasonable party would have understood that the [information was] essential to the Trustee's case"); *Younes*, 312 F.R.D. at 711 (conduct not "substantially justified" where "instead of responding to the Court's Order [defendant] decided for itself what to answer" and ultimately provided a "woefully incomplete and non-responsive" response); *Unimaven*, 2020 WL 5406162, at *4 ("Importantly, '[s]anctions may be appropriate when a party has pointedly withheld, despite orders to produce, especially relevant or detrimental documents [or information].'") (quotation omitted).

## B. <u>Cognizant Should Be Sanctioned For Its Improper Rule 26(g) Certification.</u>

Cognizant must[32] be sanctioned for failing to conduct a reasonable inquiry in answering Interrogatory No. 1 before certifying, falsely, that the answer provided to Defendants was sufficient, complete, and accurate. Fed. R. Civ. P. 26(g)(3) ("If a certification violates this rule without substantial justification, the court[] . . . must impose an appropriate sanction"); *Bistrian v. Levi*, No. 08-3010, 2022 WL 888878, at *3 (E.D. Pa. Mar. 25, 2022) (same). A reasonable inquiry requires a party to both "talk[] to employees" and review documents in preparing an interrogatory answer. *See Gonzales*, 2010 WL 553308, at *8; *Lion Brewery*, 16 F.Supp. at 134 ("If the information [sought by an interrogatory] is . . . disclosed in documents in [the

---

[32] *Younes*, 312 F.R.D. at 703 ("Rule 26(g) is cast in mandatory terms" and "[s]anctions are encouraged in order to curb discovery abuses.").

party's] possession, the interrogatories must be answered."); *Choice Is Yours, Inc. v. Choice is Yours*, No. 14-1804, 2017 WL 11550162, at *1 n.2 (E.D. Pa. Jan. 23, 2017) (party has "a 'duty to conduct a reasonable investigation, make reasonable inquiries of its employees, and fully respond to interrogatories'") (quotation omitted).

Here, Cognizant elected not to consult easily accessible documents and data, including the information available to ART concerning the structured Asset Recovery Process. Cognizant's failure to conduct a reasonable inquiry was not substantially justified, *see* pp. 20-21, *supra*, nor was it harmless, as Defendants have been seeking this critical discovery for over a year (Ex. 1), were forced to move to compel (and now to enforce), and Cognizant's failure to comply with the Court's Order has resulted in the need for yet another extension to the case schedule, thereby delaying resolution of this matter. *See* Dkt. 114 (granting an eight-week extension to the schedule pending a resolution of this motion); Dkt. 81 (extending case deadlines by three months following a ruling on Defendants' Motion to Compel (Dkt. 74)). As such, sanctions are warranted. *See Younes*, 312 F.R.D. at 707 (holding "7-Eleven violated Rule 26(g) [when] . . .  it did not perform an objectively reasonable investigation to answer interrogatories 4 and 5 which resulted in incomplete and incorrect answers"); *Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77, 91-92 (E.D. Pa. 1992) (imposing monetary sanctions under Rule 26(g) where an

attorney failed to conduct a reasonable inquiry, resulting in an inaccurate interrogatory answer, and where a client made false certifications).[33]

## C. Cognizant Should Be Precluded from Using Information It Failed to Disclose in Response to Interrogatory No. 1 Under Rule 37(c).

"Rule 37(c)(1) . . . provides that '[a] party that without substantial justification fails to disclose information required by ... [Rule 26] is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any . . . information not so disclosed.'" *Wachtel*, 239 F.R.D. at 99-100 (quoting Fed. R. Civ. P. 37(c)(1)). Here, Cognizant has failed to disclose the names of individuals who it is aware retained Cognizant assets or documents following their departure from the company and has not disclosed any steps to retrieve the assets/documents, beyond suing Defendants and seeking to sue Mr. Cox and Ms. Cox. *See* Ex. 4 at 7-12. Cognizant's failure to disclose is neither substantially justified, nor harmless. *See* pp. 20-22, *supra.* Sanctions are therefore warranted.[34] *Bracey v. Valencia*, No. 19-

---

[33] *See also Smith v. Bic Corp.*, No. 87–0795, 1988 WL 71362, at * 2 (E.D. Pa. July 1, 1988) (awarding fees and costs for motions where "counsel did not engage in the reasonable inquiry required by Rule[] . . . 26(g)," resulting in incomplete and inaccurate interrogatory responses); *Simmonds as next of friend to DH v. Evans*, No. 1:22-cv-00051, 2023 WL 6880139, at *4-5 (D.V.I. Oct. 17, 2023) (sanctioning attorney who twice signed discovery responses that failed to disclose an excess insurance policy without conducting a reasonable inquiry or asking his client about the existence of the same).

[34] Under this rule, "'there is no need for a litigant to make a motion to compel' and 'the imposition of a sanction under this provision [does not] require a violation of a

1385, 2022 WL 1570812, at *12 (W.D. Pa. May 18, 2022) (sanctioning party where discovery responses "were evasive, misleading, and constitute[d] a failure to disclose or answer" and the failure was "neither substantially justified nor harmless"); *In re Tutu Wells Contamination Litig.*, 162 F.R.D. 46, 70 (D.V.I. 1995) (sanctioning party where "the evidence suggests that the [concealment and non-disclosure of evidence] . . . was deliberate rather than negligent or inadvertent" and that such conduct "was just another attempt . . . to delay and/or hinder discovery in the[e] matter").

### D.  **Cognizant Should Be Sanctioned Under 28 U.S.C. § 1927 for Multiplying Proceedings.**

"In order to impose sanctions pursuant to § 1927[,] there must be a finding that an attorney (1) multiplied proceedings, (2) in an unreasonable and vexatious manner, (3) increasing the cost of the proceedings, and (4) that it did so in bad faith or by intentional misconduct." *Younes*, 312 F.R.D. at 702 (citing *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008)). Here, all four factors are satisfied with respect to Cognizant's inadequate answer to Interrogatory No. 1.

First, Cognizant has multiplied proceedings by refusing to answer Interrogatory No. 1 in the first instance, necessitating a motion to compel (Dkt. 74), and then providing a wholly deficient supplemental answer in violation of the

---

court order as a prerequisite.'" *Reilly v. Home Depot U.S.A., Inc.*, No. 20-13030 (NLH/AMD), 2023 WL 3043885, at *7 (D.N.J. Apr. 20, 2023) (quotation omitted).

Court's Order (Dkt. 94), resulting in the instant motion. Second, Cognizant's conduct is both unreasonable, *see* pp. 20-22, *supra*, and vexatious and has caused significant delay. Third, Cognizant's withholding of critical information responsive to Interrogatory No. 1 has increased the costs of the proceedings, as Defendants' counsel have expended significant time and resources issuing their discovery, meeting and conferring with Cognizant, moving to compel and to enforce, and now seeking sanctions for Cognizant's non-compliance with the Court's discovery order. Fourth, Cognizant is clearly acting in bad faith by refusing to explore ART's formal Asset Recovery Process and related documentation (including its log), in responding to the discovery, and withholding critical information harmful to Cognizant's claims in this case, and its defenses in the *Palmer* and *Franchitti* actions. Sanctions in this instance are therefore appropriate to discourage Cognizant from engaging in discovery misconduct and further delaying the proceedings. *See Hawthorne v. Municipality of Norristown*, No. 15-01572, 2016 WL 1720501, at *2 (E.D. Pa. Apr. 29, 2016) (noting "[t]he principal purpose of imposing sanctions under Section 1927 is the 'deterrence of intentional and unnecessary delay in the proceedings'") (quoting *In re Schaefer*, 542 F.3d at 101); *Itel Containers Int'l Corp. v. Puerto Rico Marine Mgmt., Inc.*, 108 F.R.D. 96, 103, 106 (D.N.J. 1985) (awarding monetary sanctions in case where "counsel . . . 'unreasonably' and 'vexatiously' multiplied

the proceedings . . . by delaying [on multiple occasions] the disclosure of lack of subject matter jurisdiction").

## E. Sanctions Are Also Appropriate Under the Court's Inherent Powers.

"Neither statute nor the Federal Rules of Civil Procedure supplant[] . . . the implicit, inherent power of the court," *Derzack v. Cnty. of Allegheny, Pa.*, 173 F.R.D. 400, 411-12 (W.D. Pa. 1996), to issue sanctions where "'a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Bistrian*, 2022 WL 888878, at *4 (quotation omitted). The Court should sanction Cognizant pursuant to its inherent powers as Cognizant has deliberately withheld critical discovery in bad faith in order to preclude Defendants from obtaining information supporting their counterclaims and refuting Cognizant's claims (including its claim of "irreparable harm"), and such conduct has significantly delayed this case. *See Itel Containers Int'l*, 108 F.R.D. at 97, 106-07 (awarding monetary sanctions where defendant and counsel "deliberately drafted an unresponsive interrogatory answer to conceal the fact that there was no diversity [jurisdiction]"); *GMAC Bank v. HTFC Corp.*, 252 F.R.D. 253, 258, 261, 265 (E.D. Pa. 2008) (upholding award of sanctions pursuant to the Court's inherent power where attorney allowed its client provide incomplete or evasive answers at his deposition and took no steps to remedy the client's misconduct).

**F.** **Defendants' Request for Sanctions.**

Defendants seek five remedies by way of this Motion. First, pursuant to Federal Rule of Civil Procedure 37(b), Defendants seek an Order compelling Cognizant to provide a complete and accurate answer to Interrogatory No. 1 within ten business days. *See* Fed. R. Civ. P. 37(b)(2)(A) (permitting the court to "issue further just orders" where a party fails to obey a discovery order). Cognizant's complete and accurate answer should be accompanied by a verification that attests, under penalty of perjury, that the answer is complete.

Second, Defendants seek an adverse inference jury instruction at trial that Cognizant elected not to comply with the Court's December 8, 2023 Order in the first instance because it presumed the responsive information would be harmful to its case. *See id.*; *Sines v Kessler*, 339 F.R.D. 96, 108-11 (W.D. Va. 2021) (granting "Plaintiffs' request for a permissive adverse-inference instruction" under Rule 37(b) where defendant, in bad faith, failed to produce relevant information in response to a discovery order); *Parrick v. FedEx Ground Package Sys., Inc.*, No. CV 09-95, 2010 WL 3724825, at *6-11 (D. Mont. Sept. 17, 2010) (granting request for Rule 37(b) adverse inference instruction where "Defendants' failure to produce the discovery as ordered by the Court suggest[ed] that the materials sought contained evidence adverse to Defendants" and where "the adverse inference sanction w[ould] deter Defendants from refusing to produce discovery materials in the future").

Third, Defendants seek an award of reasonable fees and costs, including attorneys' fees, associated with this Motion and Defendants' May 26, 2023 Motion to Compel (Dkt. 74), to be imposed on Cognizant. *See* Fed. R. Civ. P. 37(b)(2)(C) (the court "must order the disobedient party[] . . . to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with a court order]"); Fed. R. Civ. P. 26(g)(3) (the Court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both" which "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation"); Fed. R. Civ. P. 37(c)(1) (the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure [to disclose or supplement]").

Fourth, Defendants request that the Court enter an order precluding Cognizant from supplying the non-disclosed evidence on a motion, at a hearing, or at a trial. *See* Fed. R. Civ. P. 37(b)(2)(A); Fed. R. Civ. P. 37(c)(1) (precluding use of non-disclosed evidence "on a motion, at a hearing, or at a trial" and permitting the "impos[ition of] other appropriate sanctions")

Finally, Defendants request that Cognizant be precluded from filing a motion for summary judgment as to Defendants' retaliation counterclaims. *See* Fed. R. Civ. P. 37(b)(2)(A); Fed. R. Civ. P. 37(c)(1).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Sanctions and to Enforce the Court's December 8, 2023 Order should be granted.

Dated: April 5, 2024

By: /s/Jonathan Rudnick
Jonathan Rudnick, Esq.
**LAW OFFICES OF JONATHAN RUDNICK, LLC.**
788 Shrewsbury Avenue
Tinton Falls, NJ 07724
Telephone: (732) 842-2070
Facsimile: (732) 879-0213
jonr@jonrudlaw.com

Daniel A. Kotchen (*pro hac vice*)
Mark Hammervold (*pro hac vice*)
Lindsey Grunert (*pro hac vice*)
Amanda Burns (*pro hac vice*)
**KOTCHEN & LOW LLP**
1918 New Hampshire Avenue NW
Washington, DC 20009
(202) 471-1995
(202) 280-1128 (Fax)
dkotchen@kotchen.com
mahmmervold@kotchen.com
lgrunert@kotchen.com
aburns@kotchen.com

*Attorneys for Defendants Jean-Claude Franchitti and Vartan Piroumian*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system.

Dated: April 5, 2024

By: /s/Jonathan Rudnick
Jonathan Rudnick